IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Angel White, #217110, | ) | C/A No.: 1:10-1456-JFA-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden of Lee Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Michael Angel White is an inmate at the Lee Correctional Institution serving a sentence for armed robbery, kidnaping, and assault and battery with intent to kill. He filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #29, #30]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #31]. Petitioner filed a response in opposition to Respondent's motion. [Entry #34]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

I.    Procedural Background

In June 2002, Petitioner was indicted in Lexington County for armed robbery (2002-GS-32-2010), kidnaping (2002-GS-32-2012), and assault and battery with intent to kill (2002-GS-2013). [Entry #29-13 at 84–89].[1]  Elizabeth Fullwood and Wallace Alves of the Lexington County Public Defenders Office represented him at trial. [Entry #29-8 at 5]. The jury found Petitioner guilty as charged, and on June 25, 2002, the Honorable Marc Westbrook sentenced him, pursuant to S.C. Code Ann. § 17-25-45, to life without parole on each conviction. [Entry #29-13 at 92–95]. A timely Notice of Appeal was filed on Petitioner's behalf and an *Anders*[2] brief was submitted by Assistant Appellate Defender Aileen P. Clare on August 14, 2003, along with a petition to be relieved as counsel, raising as the sole arguable ground whether the lower court erred in denying appellant's motion for a mistrial, after the solicitor made a burden-shifting comment in his closing argument. [Entry #29-1]. Petitioner filed a pro se brief on September 5, 2003, asserting the same issue. [Entry #29-2].

_____

[1]Citations are to the Entry numbers of documents filed in this habeas matter, many of which are taken from transcripts in proceedings in South Carolina state courts. Page references are to the pages in the Entry cited, available in the upper-right corner of the documents filed with the court.

[2]*Anders v. California*, 386 U.S. 738 (1967).  *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited.  *Anders*, 386 U.S. at 744.

2

The South Carolina Court of Appeals ("Court of Appeals") dismissed the appeal pursuant to *Anders* and *State v. Williams*, 406 S.E.2d 357 (S.C. 1991). [Entry #29-3]. The remittitur was issued on February 24, 2004. [Entry #29-4]. Petitioner did not seek rehearing in the Court of Appeals or certiorari to the South Carolina Supreme Court. [Entry #1-2 at 3].

Petitioner filed a pro se application for postconviction relief ("PCR") on May 21, 2004, in which he alleged several grounds of ineffective assistance of counsel, as amended, including: 1) failure to object to the State's notice of intent to seek a sentence of life without the possibility of parole ("LWOP") when an investigator from the sheriff's department, rather than the solicitor, served Petitioner with the notice; 2) failure to argue the application of S.C. Code Ann. § 17-25-45 violated equal protection because Petitioner's prior offenses were disproportionately found among minorities; 3) failure to visit Petitioner more, having only visited him at the detention center four times for a total of one hour and fifteen minutes prior to trial; and 4) failure to call witnesses. [Entry #29-13 at 97–106, 117].

A PCR evidentiary hearing was held on November 30, 2006, at which Petitioner testified and was represented by Tommy A. Thomas, Esq. [Entry #29-13 at 124–125 through #29-14 at 68 (Hr'g tr.)]. On March 21, 2007, the Honorable Diane S. Goodstein entered her written order of dismissal. [Entry #29-14 at 72–80]. Petitioner appealed the denial of state PCR. [Entry #5]. On appeal, he was represented by Eleanor Duffy Cleary of the S.C. Office of Indigent Defense, Division of Appellate Defense. *Id.* On January 25,

3

2008, counsel filed a petition to be relieved as appellate counsel and a Petition for Writ of Certiorari pursuant to *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).[3] *Id.* Counsel raised as the sole arguable ground whether the PCR court erred in finding counsel was not ineffective for having failed to call Petitioner's alibi witness in his defense at trial. [Entry #29-5 at 3]. On June 10, 2009, the South Carolina Court of Appeals entered its order denying the petition for writ of certiorari after review under *Johnson* and granting counsel's request to be relieved. [Entry #29-6]. The remittitur was issued on June 26, 2009. [Entry #29-7].

II.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, as amended:

**Ground One:** Ineffective Assistance of Counsel

Supporting Facts: Petitioner alleges that in the closing argument for the state, the solicitor attempted to persuade the jury into coming back with a verdict of guilt by "adding on to the key witness who was the victim." Defense counsel for defendant failed to object to remark and ask for curative instruction.

**Ground Two:** Ineffective Assistance of Counsel

Supporting Facts: Petitioner alleges that during the testimony of the state's main key witness who is also the victim began leading the victim in the state's direct. During the leading of the victim (witness), defense counsel for petitioner failed to object and ask for curative instruction. Due to this lack of effective assistance the

---

[3] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals).

4

leading had a cumulative effect and due to the fact that the jury would give great weight to key witness.

B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the

5

federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.    Habeas Corpus Standard of Review

        1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual

determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a

motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[4] Furthermore, strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters such as this one, in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[5] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

---

[5] If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

10

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

      3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in

limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

D.    Analysis

1.    The AEDPA Statute of Limitations

Respondent's first ground for dismissal of this Petition is that it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996, and substantially modified procedures for consideration of habeas corpus petitions of state inmates in federal court, including the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations:

(d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A)    **the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;**

12

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection**.

28 U.S.C. § 2254(d) (emphasis added). Subsection (d)(1)(A) provides that the one-year statute of limitations begins to run on the date Petitioner's conviction becomes final, not after collateral review is completed. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within ten days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. *Crawley v. Catoe*, 257 F.3d 395, 398 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. *Harris*, 209 F.3d at 328, n.1 (noting conviction becomes final on the expiration of the 90-day period to seek review by the United States Supreme Court from a state's highest court; *cf. Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002) (discussing

13

procedure for district court's sua sponte timeliness analysis, noting limitations period begins to run when time for filing certiorari in the United States Supreme Court has elapsed).[6]

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." *Taylor v. Lee,* 186 F.3d 557, 561 (4th Cir. 1999).

The AEDPA statute of limitations is not jurisdictional, but subject to the doctrine of equitable tolling. *Harris*, 209 F.3d at 330; *see also Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). Under § 2244(d), the State bears the burden of asserting the statute of limitations. *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003).

a.    The Parties' Positions

Petitioner directly appealed his conviction to the Court of Appeals, which dismissed his appeal and issued the remittitur on February 24, 2004. [Entry #29-4].

_____

[6] The *Hill* court did not discuss whether the state court that had dismissed the petitioner's appeal was the state court of last resort.

14

Petitioner did not seek further review by the South Carolina Court of Appeals or the Supreme Court of South Carolina, nor did he file a petition of certiorari to the United States Supreme Court. [Entry #1–2 at 3].

Respondent argues that Petitioner did not timely file his federal habeas petition within the AEDPA's one-year limitations period because Petitioner's judgment became final for purposes of 28 U.S.C. § 2244(d)(1)(A) as of February 24, 2004, the date the Court of Appeals issued its remittitur. [Entry #29 at 7]. Accordingly, Respondent argues that the one year for filing began to run on February 24, 2004, was tolled on May 21, 2004, with Petitioner's filing of a PCR application, and resumed on June 26, 2009, when the Court of Appeals issued the remittitur after denying his petition for writ of certiorari of his PCR appeal. Respondent argues that the statute of limitations ended on March 31, 2010, and that Petitioner's federal habeas petition, filed June 3, 2010 is untimely. [Entry #29 at 7].

Petitioner argues that he timely filed his petition because he filed it within one year of the June 26, 2009 remittitur. [Entry #34-1 at 1–2]. He further argues that he was unaware that the one-year period began to run prior to his filing the PCR application, and he includes communications with his appellate counsel that caused him to believe he had one year from June 26, 2009 to file his federal habeas petition. [Entry #34-1 at 1–3; #34-2].

      b.     Finality of Judgment for Purposes of the AEDPA Statute of Limitations

Respondent argues Petitioner's conviction became final for purposes of § 2244(d)(1)(A) on February 24, 2004, the date the Court of Appeals issued its remittitur dismissing his direct appeal. [Entry #29 at 7].

The AEDPA's statute of limitations provides, in pertinent part:

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    (A)   the date on which the judgment became final **by the conclusion of direct review or the expiration of the time for seeking such review**;

         . . .

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (emphasis added).

The emphasized language of § 2244(d)(1)(A) is at issue here. Often, the "direct review" of an underlying criminal judgment will include the 90 days within which a petitioner could seek certiorari from the United States Supreme Court. *See* Sup. Ct. R. 13(1) (providing petition for certiorari is for review of judgment from case entered by a "state court of last resort."). Accordingly, the statute of limitations would not begin to run until the expiration of the 90-day period for seeking certiorari from judgment entered by a state court of last resort. However, a petitioner may not be entitled to the 90-day tolling period when the United States Supreme Court lacks jurisdiction to review the direct

16

appeal. *See* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari . . .."); Sup. Ct. R. 13(1).

In this case, Petitioner directly appealed to the Court of Appeals. However, he did not petition the South Carolina Supreme Court for certiorari. If the Court of Appeals is considered a "state court of last resort," Petitioner could have sought a writ of certiorari directly to the United States Supreme Court, thereby tolling the running of AEDPA statute of limitations for the 90 days. If the Court of Appeals is not considered the "state court of last resort" for Petitioner's direct appeal, he would not be entitled to the additional 90-day tolling period, and the judgment would have been considered final when the Court of Appeals issued its remittitur on February 24, 2004. *See Christy v. Christy*, 452 S.E.2d 1, 4 (S.C. Ct. App. 1994) (noting final disposition occurs "when remittitur is returned by the clerk of the appellate court and filed in the lower court.").

The undersigned agrees with the reasoning of cases in this district that hold that the South Carolina Supreme Court remains the "state court of last resort" for purposes of determining whether the 90-day tolling period should be added to the limitations period for a petitioner who did not seek the South Carolina Supreme Court's review of the Court of Appeals' dismissal of his direct appeal. *See, e.g., Glover v. Warden*, 3:10-2277-DCN-JRM, 2011 WL 2731325 (D.S.C. May 31, 2011) (adopted on Jul. 13, 2011); *Bryant v. Cartledge*, 3:09-3234-CMC, 2011 WL 145328 (D.S.C. Jan. 18, 2011); *Reddock v. Ozmit*, 3:09-204-RBH, 2010 WL 568870 (D.S.C. Feb. 11, 2010); *Martino v. Cartledge*,

17

0:09-527-HMH, 2010 WL 56093 (D.S.C. Jan. 4, 2010); *Hammond v. Hagan*, 4:07-1081-JFA, 2008 WL 2922860, at *3 (D.S.C. July 24, 2008) (finding petitioner who did not seek certiorari review from the South Carolina Supreme Court, "is not entitled to an additional tolled time period of 90 days in which to seek certiorari review from the United States Supreme Court."); *and Moore v. Padula*, 8:07-1471-HMH, 2008 WL 1994842 (D.S.C. May 5, 2008).

In finding petitioners were not entitled to the 90-day tolling period when they did not pursue review beyond the remittitur from the Court of Appeals, several of these decisions discussed the interplay between the AEDPA's requirement and decisions of the Supreme Court of South Carolina that do not require a criminal defendant to seek certiorari from the South Carolina Supreme Court for purposes of exhausting available state court remedies in collateral proceedings. *See In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990) (holding "a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the [South Carolina] Court of Appeals in order to be deemed to have exhausted all available state remedies."); *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002) (considering *In re Exhaustion* and finding discretionary review by the state supreme court as outside the standard review process, making a request for such discretionary review was unnecessary to exhaust state remedies). The undersigned agrees with the analysis in these cases that "while both exhaustion of state remedies and

timeliness are statutory considerations precedent to federal habeas review, they are independent requirements." *Reddock*, 2008 WL 568870, at *3.[7]

Because the South Carolina Supreme Court, and not the Court of Appeals, is the court of last resort in considering direct appeals,[8] a habeas petitioner who does not seek

_____

[7]As noted in the *Reddock* and *Marino* decisions, some courts in this district have suggested that a petitioner may be entitled to toll the 90 days to seek certiorari review from the United States Supreme Court even when he did not petition the South Carolina Supreme Court for certiorari after the South Carolina Court of Appeals dismissed his appeal. *See Gainey v. South Carolina*, 9:08-3900-PMD, 2009 WL 2644013 (D.S.C. Aug. 26, 2009 *Goodman v. Cartledge*, 9:07-3519-MBS, 2008 WL 4458186 (D.S.C. Sept. 30, 2008). These decisions seem to base that finding in part on *Salters v. Greenville Housing Authority*, 469 U.S. 1225 (1985) (mem.) for the proposition that, arguably a petitioner could obtain the United States Supreme Court's certiorari review directly from a South Carolina Court of Appeals decision. However, as Judge Herlong explained, "the South Carolina Supreme Court's records show that in *Salters*, the petitioner did in fact seek certiorari from the South Carolina Supreme Court before filing her certiorari petition with the United States Supreme Court." *Martino*, 2009 WL 4727554, at *6 n. 5. The undersigned finds *Salters* does not support the suggestion that a petitioner may seek certiorari review by the United States Supreme Court of a South Carolina Court of Appeals' decision without first seeking certiorari review from the South Carolina Supreme Court.

[8]The undersigned notes that, in 2009, the South Carolina Supreme Court indicated it would no longer consider certiorari petitions for matters in which the South Carolina Court of Appeals had dismissed a criminal defendant's direct appeal after *Anders* review. *State v. Lyles*, 673 S.E.2d 811, 812 (S.C. 2009) ("We deny the petition and hold that, as a matter of policy, we will not entertain petitions for writs of certiorari to the Court of Appeals where the Court of Appeals has conducted an *Anders* review."). As the *Reddock* court explained, *Lyles* suggests that, for matters on direct appeal after the February 19, 2009 date of the *Lyles* decision, an appellant may be able to seek certiorari review from the United States Supreme Court directly from the South Carolina Court of Appeals' *Anders* dismissal. *See Reddock*, 2010 WL 568870, *5 (noting *Lyles* indicates a revised state procedure the would make the South Carolina Court of Appeals the "'the highest court of a State in which a decision could be had' regarding cases that were dismissed pursuant to *Anders* review."). Because *Lyles* was not decided until 2009, several years after Petitioner's direct appeal was dismissed by the South Carolina Court of Appeals, this change in state procedure for purposes of seeking certiorari from the United States

review from the South Carolina Supreme Court will be unable to obtain certiorari review from the United States Supreme Court.   Accordingly, in such situations, the habeas petitioner's direct appeal will be considered final for purposes of the AEDPA's limitations period on the date the Court of Appeals issues its remittitur.

        2.        Petitioner's Petition Was Not Timely Filed.

In this case, Petitioner could have sought certiorari from the South Carolina Supreme Court, but he did not do so. Accordingly, the United States Supreme Court would have lacked jurisdiction to consider his request for a writ of certiorari. Therefore, he is not entitled to have the AEDPA's statute of limitations tolled for the 90 days within which he could have sought such review.

The undersigned agrees with Respondent's position that Petitioner's judgment became final for purposes of the AEDPA's statute of limitations on February 24, 2004 when the Court of Appeals issued its remittitur. He filed his PCR application on May 21, 2004, tolling the statute of limitations with 278 days of the one-year limitations remaining. The circuit court dismissed his PCR application, and the South Carolina Court of Appeals denied his request for appellate review. On June 26, 2009, the South Carolina Court of Appeals issued the remittitur, which meant his PCR application was no longer "pending" for purposes of the tolling provision of 28 U.S.C. § 2244(d)(2). *See Holland*, 130 S. Ct. at 2557 (noting tolling pursuant to 28 U.S.C. § 2244(d)(2) does not continue

_____

Supreme Court would not apply to his case. *Accord Reddock*, 2010 WL 568870, *5.

20

during pendency of any discretionary review of PCR application). The remaining 278 days of the statute of limitations for Petitioner to bring a federal habeas petition expired on March 31, 2010. Accordingly, Petitioner's federal habeas petition, filed June 3, 2010, was filed some 64 days too late. The undersigned recommends finding Petitioner is barred from federal habeas review unless he has demonstrated that he diligently has been pursuing his rights and that extraordinary circumstances prevented his timely filing, which could equitably toll the statute of limitations.

    a.    Petitioner Has Not Demonstrated Entitlement to Equitable Tolling.

Petitioner argues that he timely filed his federal habeas petition because he filed his petition within one year of the June 26, 2009 remittitur on his PCR application. Response. [Entry #34-1 at 1–2]. He claims he was not aware that the one-year period began to run prior to his filing the PCR application. *Id.* The undersigned considers Petitioner's argument as one that the AEDPA's statute of limitations should be equitably tolled because of his misunderstanding.

To benefit from the doctrine of equitable tolling, Petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* at 2562 (*quoting Pace*, 544 U.S. at 418). *See also Rouse*, 339 F.3d at 246 (holding that, for equitable tolling to apply, petitioner must show that there was 1) an "'extraordinary circumstance,' 2) beyond his control or external to his own conduct, 3) that prevented him from filing on time.").

The *Holland* Court explained that "the diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 2565 (internal quotation marks omitted). In discussing the second prong, the Court indicated that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Id.* at 2564 (*quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) and *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)). Nonetheless, the Court made it clear that attorney neglect could rise to the level of being an "extraordinary circumstance," and collected cases on that point. *Id.* at 2564.

Here, Petitioner supports his argument in part by providing a letter he received from a law clerk working with the South Carolina Commission on Indigent Defense (the "Commission") that led him to believe he had one year from June 24, 2009 to file a federal habeas petition. [Entry #34-2]. In that July 15, 2009 letter, a law clerk from the Commission told Petitioner that he had one year to file a petition for habeas corpus and that the Commissioner had closed his file and could not handle his habeas petition. *Id.* Petitioner also includes a June 11, 2009 letter from the Chief Appellate Defender at the Commission that informed him that the Court of Appeals had denied his request for certiorari review of his PCR denial and provided him with "information concerning federal habeas corpus." [Entry #34-2].

The undersigned is of the opinion that Petitioner's untimely filing should not be excused by equitable tolling under *Holland's* two-pronged test. First, Petitioner has not

22

demonstrated he was reasonably diligent in pursuing his rights below. In *Holland*, the Court found petitioner had acted with reasonable diligence because he wrote to his counsel numerous times to provide "crucial information and [] direction" to counsel, and repeatedly contacted the "state courts, their clerks, and the Florida Bar Association" in an effort to have his attorney removed from the case because counsel was impeding Holland's ability to pursue his legal remedy. 130 S. Ct. at 2565. The Court also noted that Holland prepared and promptly filed his own federal habeas petition the day he learned his counsel had not timely filed the petition. *Holland*, 130 S. Ct. at 2565.

Here, Petitioner received communications from his PCR counsel and was provided written information about pursuing a federal habeas corpus petition. *See* Entry #34-2. However, the undersigned is of the opinion that Petitioner has not demonstrated the requisite diligence to satisfy the first-prong of *Holland's* two-pronged test for equitable tolling. *Holland* requires a petitioner to establish both prongs of the test to show entitlement to equitable tolling, so the court could end its analysis here.

Independently, the undersigned opines that Petitioner cannot satisfy the second prong of the test because he has not set forth facts that could demonstrate an "extraordinary circumstance" kept him from timely filing this action. In *Holland*, the Court catalogued the actions and inactions of Holland's counsel, which included his failure to file Holland's federal habeas petition in a timely manner or to research the applicable statute of limitations, despite numerous communications from his client

23

regarding the petition and its time limitations. 130 S. Ct. at 2564. Holland's counsel also neglected to communicate with his client. *Id.*

*Holland* does not afford Petitioner relief. Although the law clerk from the Commission on Indigent Defense appears to have provided incorrect information to Petitioner regarding the deadline for filing a federal habeas petition, that one-page communication from a non-lawyer whose agency no longer represented Petitioner does not rise to the level of an "extraordinary circumstance" that would satisfy the second prong of *Holland's* test. Here, Petitioner has not presented facts to satisfy more than excusable neglect on the part of his former counsel.  He has not shown an extraordinary circumstance, and the undersigned recommends finding Petitioner has not satisfied the second prong of *Holland*'s test.

Accordingly, the undersigned is of the opinion that the Petition should be dismissed on statute-of-limitations grounds. The filing was untimely, and Petitioner has not presented facts sufficient to support his argument that the limitations period should be equitably tolled. *See Harris*, 209 F.3d at 330 (noting petitioner has burden of showing equitable tolling). The undersigned recommends that Respondent's motion for summary judgment be granted.

III.    Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment be granted and the Petition be dismissed with prejudice.

24

IT IS SO RECOMMENDED.

July 22, 2011                                    Shiva V. Hodges
Florence, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**